IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EMMANUEL TEMPLE, THE HOUSE OF PRAISE; CARL E. HARRIS; LIGHTHOUSE OUTREACH CENTER ASSEMBLY OF GOD; JOE HUNKIN, JR., <br><br>Plaintiffs, <br><br>vs. <br><br>NEIL ABERCROMBIE, in his official capacity as Governor of the State of Hawaii; LORETTA J. FUDDY, in her official capacity as Director of Health of the State of Hawaii; STATE OF HAWAII, <br><br>Defendants. | CIV. NO. 11-00790 JMS-KSC <br><br>ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER |

## **ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

### **I. INTRODUCTION**

Hawaii's Civil Unions Law, 2011 Haw. Sess. L. Act 1 (codified at Hawaii Revised Statutes ("HRS") Ch. 572B) ("Act 1") becomes effective on January 1, 2012. Plaintiffs Emmanuel Temple, the House of Praise; Carl E. Harris; Lighthouse Outreach Center Assembly of God; and Joe Hunkin, Jr. (collectively "Plaintiffs") filed this action under 42 U.S.C. § 1983 on December 28, 2011,

seeking declaratory and prospective injunctive relief to prevent Defendants Neil Abercrombie, in his official capacity as Governor of the State of Hawaii; and Loretta J. Fuddy, in her official capacity as Director of Health of the State of Hawaii (collectively "Defendants") "from enforcing Act 1 against [them]." Doc. No. 4, Pls.' Mot. at 2. Plaintiffs move for a temporary restraining order ("TRO") to prevent such enforcement and to stop Act 1's implementation on January 1, 2012. Based on the following, the Motion is DENIED.

## II. **BACKGROUND**

Hawaii Governor Neil Abercrombie signed Act 1 into law on February 23, 2011. Now, three days before it is to go into effect, Plaintiffs seek a TRO under Federal Rule of Civil Procedure 65, contending that they will be subject to "imminent and immediate danger" by being subject to civil fines or penalties if Act 1 takes effect on January 1, 2012. *Id.* at 12; Doc. No. 1, Compl. ¶ 19. Plaintiffs' Complaint alleges violations of the First, Fifth, and Fourteenth Amendments to the United States Constitution. Plaintiffs contend that -- because Act 1 does not specifically exempt religious organizations from Hawaii's anti-discrimination laws (*e.g.*, HRS Chapter 489 -- Discrimination in Public

Accommodations)[1] -- they will be subject to immediate and irreparable harm, and that they are likely to succeed on the merits of their Constitutional claims.

---

[1] In particular, HRS § 489-3 provides:

> Unfair discriminatory practices that deny, or attempt to deny, a person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation on the basis of race, sex, including gender identity or expression, sexual orientation, color, religion, ancestry, or disability are prohibited.

In turn, HRS § 489-7.5(a) provides a private cause of action for violations, as follows:

> (a) Any person who is injured by an unlawful discriminatory practice, other than an unlawful discriminatory practice under part II of this chapter, may:
>     (1) Sue for damages sustained, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorneys' fees together with the costs of suit; and
>     (2) Bring proceedings to enjoin the unlawful discriminatory practices, and if the decree is for the plaintiff, the plaintiff shall be awarded reasonable attorneys' fees together with the cost of suit.

And HRS § 489-8 provides for imposition of penalties for violations in actions brought by the Hawaii Attorney General or Hawaii Civil Rights Commission, as follows:

> (a) It shall be unlawful for a person to discriminate unfairly in public accommodations.
>
> (b) Any person, firm, company, association, or corporation who violates this part shall be fined a sum of not less than $500 nor more than $10,000 for each violation, which sum shall be collected in a civil action brought by the attorney general or the civil rights commission on behalf of the State. The penalties provided in this section shall be cumulative to the remedies or penalties available under all other laws of this State. Each day of violation under this part shall be a separate violation.

The Complaint alleges that Plaintiff Emmanuel Temple, the House of Praise, is a domestic, nonprofit corporation whose purpose is to advance and promote the worship of God; to engage in and promote the study of the Holy Scriptures; and to advance the gospel of Jesus Christ. Plaintiff Carl E. Harris ("Harris") is a Bishop and Pastor of Emmanuel Temple, House of Praise. Likewise, co-Plaintiff Lighthouse Outreach Center Assembly of God is a domestic, nonprofit corporation whose purpose is to worship the Lord, and conduct activities such as Sunday school, outreach programs, and day care. Doc. No. 1, Compl. ¶ 4.

Harris attests that he opposes Act 1 because same sex marriage and civil unions are against the teachings of the gospel of Jesus Christ. Doc. No. 4-1, Harris Decl. ¶¶ 3,4. He states that he is aware of instances in "New Jersey, California, and Hawaii" where religious institutions and churches have refused to rent their properties to others for civil unions and receptions, and have thus been subject to civil rights complaints. *Id.* ¶ 6. He is "aware that this year, the Hawaii Civil Rights Commission accepted a complaint from a same sex couple against a church which refused to rent its property for a same sex couple to perform a same sex marriage." *Id.* ¶ 7. He further attests that:

> [b]ecause of my stance regarding same-sex unions and marriages, I am under imminent and immediate threat commencing on January 1, 2012 of being investigated; incurring attorneys fees and costs in defending my

4

>religious liberties; being enjoined and fined by the
>Hawaii Civil Rights Commission for refusing to rent my
>facilities to same sex couples.

*Id.* ¶ 8.

Among other provisions, Act 1 details who may solemnize a civil union. HRS § 572B-4 (b) allows judges who may perform marriages under HRS Ch. 572 to legally perform civil unions. It also allows "[a]ny ordained or licensed member of the clergy" to solemnize a civil union. And it specifically provides that such authorized persons are not required to solemnize civil unions and are not subject to fines or penalties if they refuse, for any reason, to join persons in a civil union. *Id.* Act 1 thus contains "immunity" from fines or penalties if a pastor, such as Harris, refuses to perform a civil union (if such refusal would otherwise constitute illegal discrimination). Act 1 does not, however, contain "immunity" if a church or other religious organization refuses -- on the basis that it is opposed to civil unions -- to rent or otherwise allow use of its facilities for performing civil unions or hosting receptions celebrating a civil union.[2]

---

[2] Legislation was introduced in 2011 that would have exempted religious organizations from "any civil claim or cause of action" for refusing to provide "services, accommodations, benefits, advantages, facilities, goods, or privileges" if "related to a solemnization or celebration of a same-sex relationship, such as a same-sex marriage or a civil union between persons of the same sex" if it violated the organization's religious beliefs and faith. *See* H.B. No. 1244, 26th Leg. (Hawaii 2011) and S.B. No. 1447, 26th Leg. (Hawaii 2011), Doc. Nos. 5 & 6, Harris Decl. Exs. 4 & 5. That legislation was not enacted, and the Hawaii Civil Rights Commission opposed
(continued...)

The Complaint, among other things, seeks prospective injunctive relief to enjoin Abercrombie and/or Fuddy, in their official capacities, from enforcing Hawaii anti-discrimination laws against Plaintiffs, based upon Plaintiffs' planned refusal to make their facilities available to those who might seek to use them for performing or celebrating civil unions. Because of the alleged burden on their Constitutional rights, Plaintiffs seek a TRO "mandating that Act 1 cannot be implemented until a trial on the merits." Doc. No. 4, Pls.' Mot. at 15.

### III. **STANDARD OF REVIEW**

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See, e.g.*, *Hawaii v. Gannett Pac. Corp.*, 99 F. Supp. 2d 1241, 1247 (D. Haw. 1999); *cf. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (observing that an analysis of a preliminary injunction is "substantially identical" to an analysis of a temporary restraining order).

A "preliminary injunction is an extraordinary and drastic remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7,

---

[2](...continued)
it. In opposing the legislation, the Hawaii Civil Rights Commission testified that the language was vague and overly broad because, for among other reasons, it might allow a religious organization to discriminate against same-sex couples in civil unions in use of church facilities that are offered to the general public for a fee for marriages and other celebrations. See Doc. No. 4-7, Luiz Decl. Ex. 5, Testimony regarding H.B. 1244, at 2.

24 (2008) (citation omitted).  A "plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Id.* at 20; *accord Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009).  "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135-36 (9th Cir. 2011) (citing *Clear Channel Outdoor, Inc. v. City of L.A.*, 340 F.3d 810, 813 (9th Cir. 2003)).  *Winter* emphasized that -- contrary to some earlier Ninth Circuit caselaw -- plaintiffs seeking preliminary relief must demonstrate that "irreparable injury is *likely* in the absence of an injunction."  555 U.S. at 22.  *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) ("In *Winter*, the Supreme Court definitively refuted [the Ninth Circuit's] 'possibility of irreparable injury' standard.").

///

///

///

7

# IV. **DISCUSSION**

## A.   Principles of Justiciabilty -- Ripeness and Standing

Before addressing the merits of a challenge to the constitutionality of Act 1, either facially or as it might be applied to Plaintiffs, the court determines whether Plaintiffs' challenge is justiciable. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *see also Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002). This court's "role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). This justiciability inquiry may be addressed by asking whether Plaintiffs have standing or, alternatively, whether the challenge is ripe. *See id.* ("The constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong.").

The ripeness doctrine avoids "premature adjudication" of disputes. *Scott v. Pasadena Unif. Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002). Where, as here, a plaintiff challenges a law before it might be enforced -- a "pre-enforcement challenge" -- the claim is "only ripe only if a plaintiff is presented with 'the

8

immediate dilemma to choose between complying with newly imposed, disadvantageous restrictions and risking serious penalties for violation.'" *San Luis & Delta-Mendota Water Authority v. Salazar*, 638 F.3d 1163, 1173 (9th Cir. 2011) (quoting *Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 57 (1993)). A court examines (1) "whether the plaintiffs have articulated a concrete plan to violate the law in question"; (2) "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings"; and (3) "the history of past prosecution or enforcement under the challenged statute." *Thomas*, 220 F.3d at 1139.

"Constitutional challenges based on the First Amendment present unique standing considerations." *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003). "In an effort to avoid the chilling effect of sweeping restrictions, the Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences." *Id.* That is, a plaintiff "does not have to await the consummation of threatened injury to obtain preventive relief." *Blanchette v. Connecticut Gen. Ins. Corps.*, 419 U.S. 102, 143, n.29 (1974). But, "when plaintiffs seek to establish standing to challenge a law or regulation that is not presently being enforced against them, they must demonstrate 'a realistic danger of sustaining a direct injury as a result of the statute's operation

9

or enforcement.'" *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154 (9th Cir. 2000) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297 (1979)); *see also Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (stating that even when plaintiffs challenge a restriction on the grounds that it may chill their First Amendment rights, "they must still satisfy the rigid constitutional requirement that plaintifs must demonstrate an injury in fact to invoke a federal court's jurisdiction." (quoting *Dream Palace v. Cnty. of Maricopa*, 384 F.3d 990, 999 (9th Cir. 2004)). "[N]either the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement." *Thomas*, 220 F.3d at 1139. "As the Supreme Court observed in *Pennell* [*v. City of San Jose*, 485 U.S. 1 (1988)] 'application of the constitutional standing requirement [is not] a mechanical exercise.'" *Carrico v. City and Cnty. of San Francisco*, 656 F.3d 1002, 1007 (9th Cir. 2011) (quoting *Pennell*, 485 U.S. at 7). "In other words, context matters." *Id.*

///

///

///

///

///

10

## B. Application of Justiciability Principles

In the specific context now before the court -- that is, given the present evidentiary record and the nature and timing of the Plaintiffs' specific challenge to Act 1 -- the relief sought is not justiciable.[3] Because the dispute is not ripe (or because Plaintiffs presently lack standing), Plaintiffs necessarily fail to meet the standard for granting of a TRO. *See, e.g.*, *Washington v. Bert Bell/Pete Rozelle NFL Retirement Plan*, 504 F.3d 818, 825 (9th Cir. 2005); *Newcomb v. U.S. Office of Special Counsel*, 2010 WL 4055572 (S. D. Cal. Oct. 5, 2010) (reasoning that, because no ripe claim was presented, a court could not issue a TRO).

In applying *Thomas*' three-part test, the court first considers whether the plaintiffs have articulated a concrete plan to violate the law in question. And in considering this factor, "[a] general intent to violate a statute at some unknown date in the future does not rise to the level of an articulated, concrete plan." *Thomas*, 220 F.3d at 1139. *Thomas* thus concluded that several landlords' future intent not to rent apartments to unmarried couples in violation of Alaska law was insufficiently concrete: "The landlords' expressed 'intent' to violate the law on some uncertain day in the future - if and when an unmarried couple attempts to

---

[3] In this Order, the court considers only the constitutional, not prudential, component of the ripeness doctrine.

lease one of their rental properties - can hardly qualify as a concrete plan." *Id.* at 1140.

Likewise, in this case any threat of enforcement and imposition of fines by government officials (*e.g*., the Hawaii Attorney General or the Hawaii Civil Rights Commission) under HRS § 489-8 for violating Act 1 is highly speculative. No one has asked Plaintiffs to use their facilities for a civil union. No one has inquired about such use in the days following Act 1's effective date. Plaintiffs cannot say when and under what circumstances such a request might be made. Although they suggest that they will refuse to make their facilities available if asked, it remains speculative when, to whom, and under circumstances that might occur.

In other words, whether Plaintiffs would face "a realistic danger of sustaining a direct injury as a result of" enforcement of § 489-8, is "wholly contingent upon the occurrence a number of unforseeable events[.]" *Id.* at 1141. First, a couple would have to ask Plaintiffs to use a particular facility of theirs -- which presumably would have to be a "public accommodation" -- for a civil union made possible by Act 1.[4] Second, Plaintiffs would wrongly have to refuse based

---

[4] This fact, standing alone, is highly speculative. Plaintiffs do not even attempt to explain why a same-sex couple would desire to solemnize a civil union on a premises owned or operated by an entity clearly hostile to same-sex couples.

12

upon a protected ground.  Next, the couple, having been denied such a request, would have to file a complaint with the Hawaii Civil Rights Commission under HRS § 489-6 or otherwise notify authorities of alleged discrimination.  Finally, such authorities would then have to decide to proceed against Plaintiffs.  None of this has occurred, and without some indication of the parameters of such a hypothetical violation (*e.g.*, the nature of the request, the proposed use, the circumstances of a denial), a "'dispute is not justiciable, because it is not ripe for court review.'"  *Id.* at 1141 (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732 (1998)).[5]  *See also Shirmer v. Nagode*, 621 F.3d 581, 586 (7th Cir. 2010) (stating that to present a justiciable controversy, the plaintiff must assert more than "a wholly speculative possibility" of enforcement); *Wolfson v. Brammer*, 616 F.3d 1045, 1064 (9th Cir. 2010) (stating, in the context of prudential ripeness, that a claim is not ripe for adjudication if it rests on future contingent events); Erwin Chemerinsky, *Federal Jurisdiction* § 2.4.1 (5th ed 2007) ("Specifically, the ripeness doctrine seeks to separate matters that are premature for review because

---

[5] Although Harris states that he is aware that this year the Hawaii Civil Rights Commission accepted a complaint brought by a same sex couple against a church that refused to rent its property for a same sex couple to perform a same sex marriage, Doc. No. 4-1, Harris Decl. ¶ 7, the possible application of such a complaint -- with no other details -- is entirely speculative to the present dispute.  If anything, it demonstrates that Plaintiffs' alleged injury (imminent threat of enforcement, and chilling of First Amendment rights) does not depend upon Act 1 becoming effective.

13

the injury is speculative and may never occur, from those cases that are appropriate for federal court action.").

Plaintiffs also point to HRS § 489-7.5, which provides a private cause of action for persons injured by an unlawful discriminatory practice in a public accommodation. Under this section, caselaw indicates an injured party may file a civil action for a violation without first seeking administrative relief with the Hawaii Civil Rights Commission. *See The Epileptic Found. v. City and Cnty. of Maui*, 300 F. Supp. 2d 1003, 1017 n.35 (D. Haw. 2004) ("[A] plaintiff injured in violation of chapter 489 may either bring a civil action pursuant to § 489-7.5 or seek administrative relief."). Again, however, a genuine threat of enforcement (by a private party) against Plaintiffs would be contingent on several events beyond Plaintiffs' control: a couple would have to ask, they would have to be denied, and they would then have to file suit.

Moreover, if the alleged discrimination victims filed suit on their own (without resort to assistance from government authorities, e.g. the Hawaii Attorney General or Hawaii Civil Rights Commission), such private action would raise other justiciability concerns. *See Associated Oregon Indus. v. Avakian*, 2010 WL 1838661, at *5 (D. Or. May 6, 2010) (reasoning that court was "aware of no case permitting a plaintiff to preemptively challenge the right of a private actor to bring

14

a private cause of action before that cause of action has arisen."). *Avakian* examined standing and ripeness in a pre-enforcement, First Amendment context, and reiterated that a "'relaxed approach to justiciability' is appropriate '*only* upon a showing that the plaintiff is immediately in danger of sustaining a direct injury as a result of an *executive or legislative* action." *Id.* (citation omitted). Plaintiffs are not seeking to declare Chapter 489 unconstitutional; they are, however, seeking to enjoin its enforcement based upon a position they might be put in if Act 1 takes effect. In this hypothetical situation, then, they would be seeking to enjoin a private actor from enforcing a surely facially-valid statute (HRS ch. 489). *See Bronson v. Swensen*, 500 F.3d 1099, 1110 (10th Cir. 2007) ("It is well-established that when a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision.") (citations omitted).

As to *Thomas*' second prong, there are also no "*specific* warning or threat to initiate proceedings" by authorities. *Thomas*, 220 F.3d at 1139 (emphasis added). Although the Hawaii Civil Rights Commission during the past legislative session in opposed the granting of broad immunity for religious organizations from anti-discrimination laws, such testimony is not a specific warning or threat against

15

Plaintiffs to impose penalties for a hypothetical violation. Similarly, contrary to Plaintiffs' argument, the Attorney General's broad statement in its Opposition that religious organizations should not be exempt from liability for discrimination when participating in non-religious activity hardly amounts to a specific threat of penalties.

Finally, the last *Thomas* inquiry -- history of past enforcement -- "has little weight in [the court's] analysis." *Wolfson*, 616 F.3d at 1060. In this context, because Act 1 is entirely new, there is no history of enforcement or interpretation regarding its provisions. Given the weakness of the claim of ripeness on the first two prongs of *Thomas*, it is clear that the present dispute is not ripe for the granting of a TRO.

In short, the present dispute -- based upon the current record and allegations -- is not justiciable such that Plaintiffs have not met their burden to authorize this court to issue a temporary restraining order that would prevent Act 1 from taking effect on January 1, 2012. *See Winter*, 555 U.S. at 20.

///

///

///

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Temporary Restraining Order, Doc. No. 4, is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 30, 2011



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Temple et al. v. Abercrombie, et al.*, Civ. No. 11-00790 JMS-KSC, Order Denying Plaintiffs' Motion for Temporary Restraining Order